UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONNA WASHINGTON, | § | |
| | § | |
| *Plaintiff,* | § | |
| vs. | § | CIVIL ACTION No. H-10-2565 |
| | § | |
| TEXAS MUTUAL INSURANCE CO., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Donna Washington filed this action alleging employment discrimination against Defendant Texas Mutual Insurance Company ("Texas Mutual") in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 (Title VII). 42 U.S.C. § 2000e, *et seq*; 42 U.S.C § 1981.[1] Before the Court is Texas Mutual's motion for summary judgment. (Dkt. 14). Washington did not file a response to this motion, thereby representing that she is unopposed. *See* S.D. TEX. L.R. 7.3.[2] After careful consideration and review of the motion, the record, the undisputed facts and the applicable law, Texas Mutual's motion for summary judgment is **GRANTED**.

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8).

[2]    In accordance with this Court's local rules, oppositions to motions are due within twenty-one days, unless such time is extended. S.D. TEX. L.R. 7.3. Any failure to respond is "taken as a representation of no opposition." S.D. TEX. L.R. 7.4. Notwithstanding Washington's failure to file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). To this end, Defendant, as "[t]he movant[,] has the burden of establishing the absence of a genuine issue of material fact and, unless [it] has done so, the [C]ourt may not grant the motion, regardless of whether any response was filed." *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995).

1

## BACKGROUND

Washington, an African-American woman, filed this action against her former employer Texas Mutual Insurance Company, a workers' compensation insurance provider. Washington began working as a workers' compensation insurance adjuster in August 2005. Initially, Washington reported directly to Hazel Smith (Caucasian) and was later transferred to a team lead by Johnnie Bass (African-American). When Bass left the company in October 2007, Washington briefly reported directly to Bass's supervisor, Regional Claims Manager, Andrea Shepard (Caucasian).

In February 2008, Washington began reporting to a new supervisor, Lynn Brown (African-American). However, after only a couple months of working for Brown, Washington asked Andrea Shepard (Brown's supervisor) if she could move to another supervisor/team, because she was not "getting along" with Brown. Shepard agreed to allow Washington to move to another supervisor. However, after discussing the possibility of a transfer with Brown and Shepard over a "pleasant lunch" where Washington and Brown agreed to try to "work together," Washington changed her mind and decided to stay on Brown's team. Shortly after, Brown and Washington again began having problems and Brown reported that Washington had several incidents of insubordination and inappropriate behavior.

In August 2008, Brown gave Washington her mid-year performance review, covering January 1, 2008 through June 30, 2008. While Washington's overall rating was 2.78 out of 4.0, Washington received a low rating of "1" ("achieves some but not all expectations") in the area of service. Washington's poor rating in service was "reflective

of [her] attitude and response in Team Meetings and occasions when instruction and/or request[s] have been made by the Team Leader." (Def. Ex. 9 at 1; (Dkt. 14-1)). The review further stated that "[Washington's] attitude has negatively impacted the morale of the team and made some of the meetings adversarial. Her reaction to Team Members can be viewed as resisting change and/or instruction, uncooperative, and unwillingness to participate." *Id.*

Washington was then given a Stage 2 Performance Notification. Washington's Stage 2 Performance Notification cited several behavior problems including: insubordination, tardiness, refusing to follow directions, failure to get along with coworkers, gossiping, and lack of teamwork. The Stage 2 Performance Notification informed Washington that she needed to "improve [her] attitude towards co-workers, management, and customers" and instructed her that, "[w]hen given tasks or direction by individuals. . .[to] follow these instruction[s] in a timely manner with professionalism and without negative comments or attitude." (Def. Ex. 8 at 3; (Dkt. 14-1)). At her deposition, Washington acknowledged that the performance notification she received was not based on her race.[3]

Just after Washington received her poor review and performance notification, she again asked to be transferred to another team or supervisor. However, this time, Shepard, and Larry Martin, Human Resources manager, decided to deny Washington's lateral transfer request. According to Shepard, she and Martin believed it imprudent to transfer

---

[3]    (Q: Now with regard to this performance notification that you got from Lynne Brown, there's nothing in here that you're claiming she's saying because of race, correct? A: No. I – no, it's not because of race.). Washington's Depo. at 105:3-7.

an employee with insubordination issues to another supervisor simply because the employee did not like her current supervisor. Instead they counseled Washington to use the performance notification as an opportunity to improve her behavior with her current supervisor. *Id.*

Closely following the denial of Washington's lateral transfer request, on or about September 8, 2008, Washington called in sick and never returned to work. At her request, Washington was subsequently placed on medical leave. Washington received disability benefits from Texas Mutual until November 2009, when her employment terminated as a result of a reduction-in-force due to economic conditions and business purposes.

On July 20, 2010, Washington filed her complaint in federal court asserting claims of "race and color discrimination" against Texas Mutual for denying her request to be transferred to another team or supervisor. (Pl. Complaint, (Dkt. 1, p. 2)). In her complaint, Washington does not allege that her inclusion in the layoff was discriminatory, and the layoff does not serve as the basis for any claim in this suit. Texas Mutual has now filed a motion for summary judgment with respect to her claims in this action.

In the pending motion, Texas Mutual argues that it is entitled to summary judgment with respect to Washington's discrimination claims for two independent reasons. First, Texas Mutual argues that the position Washington requested was a lateral transfer and the denial of such a request is not actionable under either Title VII or Section 1981. (Dkt. 14). Second, Texas Mutual argues that (1) there is no summary judgment evidence that Washington's transfer request was denied because of her race, and (2), in

4

any event, Texas Mutual had a legitimate, non-discriminatory reason for terminating Washington—her Stage 2 Performance notification for insubordination—and there is no summary judgment evidence that any employees with a Stage 2 Performance Notification received a lateral transfer.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

## ANALYSIS

In her complaint, Washington alleges that Texas Mutual discriminated against her on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991. Accordingly, to defeat Texas Mutual's summary judgment motion, Washington must establish the existence of a genuine issue of material fact as to whether Texas Mutual discriminated against her on the basis of her race. *See* FED. R. CIV. P. 56(c); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

A plaintiff can establish race discrimination in two ways, either by direct evidence or by indirect or circumstantial evidence. *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2003). Here, there is no direct evidence of race discrimination against Washington. Washington's complaint, which is not admissible evidence, states only that Texas Mutual "intentionally engaged in unlawful employment practices involving Plaintiff because of her race and color." (Pl. Complaint, (Dkt. 1, p. 3)). Washington alleges no specifics in support of these allegations and she has not responded to the pending motion for summary judgment with any direct evidence of discrimination. Accordingly, to establish a discrimination claim in this case, Washington must rely on circumstantial evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *see also Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007); *Alvarado v. Tex. Rangers,* 492 F.3d 605, 611 (5th Cir. 2007); *Okoye,* 245 F.3d at 512.

To defeat a motion for summary judgment, a plaintiff relying on circumstantial evidence must first establish a prima facie case of discrimination which raises a presumption of discrimination. *McDonnell Douglas Corp,* 411 U.S. at 802; *see also Rutherford v. Harris County,* 197 F.3d 173, 179-80 (5th Cir. 1999). To establish a *prima facie* case of race discrimination, a plaintiff must show "that she: (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) . . . 'that others similarly situated [but outside the protected class] were treated more favorably.'" *Okoye,* 245 F.3d at 512-13 (quoting *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999)); *see also Alvarado,* 492 F.3d at 611.

6

If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye,* 245 F.3d at 512. If the defendant sustains its burden, "the presumption of discrimination dissipates." *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir. 2001) (citing *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir. 2000)). The burden then "shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado,* 492 F.3d at 611(citing *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004)). "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against her because of her protected status." *Wallace,* 271 F.3d at 219-20 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)); *see also Cheatham,* 465 F.3d at 582.

## A.      Adverse Employment Action

First Texas Mutual moves for summary judgment on the ground that the position Washington requested was a lateral transfer and its denial of this request is not actionable as race discrimination under either Title VII or Section 1981. The Court agrees.

It is well established in this jurisdiction that Title VII and Section 1981 only provide a remedy for race discrimination claims involving ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating.

*Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997); *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 854 (S.D. Tex. 2010). To be an ultimate employment action, the act must adversely affect the employee's job duties, compensation, or benefits. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). Refusing an employee's request for a purely lateral transfer does not constitute an adverse employment action. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (per curiam). A transfer is lateral when the new position has the same title, benefits, duties, and responsibilities as the old position. *Hockman v. Westward Communications, L.L.C.*, 407 F.3d 317, 331 (5th Cir. 2004).

In this case, the summary judgment evidence establishes that Washington's race discrimination claims are based on the alleged denial of a purely lateral transfer and not on any ultimate employment decision by Texas Mutual. Washington identifies no facts to support a contention that the position she requested would have resulted in a raise or increase in benefits. Indeed, Andrea Shepard, Regional Claims Manager, stated in her affidavit that the transfer Washington requested was purely lateral and only involved a change in supervisor. Shepard Aff. ¶ 2. It did not involve more compensation, greater responsibility or better job duties. *Id.* It did not require greater skill, education or experience, was not more prestigious, and would not be obtained through a complex selection process. *Id.* The position Washington requested was for the same type of work, same pay and benefits, same geographic office, and was of the same importance as the role she was holding at the time of her transfer request. *Id.*

The only significant difference between her current position and the position she

requested was that Washington could have avoided her supervisor, with whom she had disagreements. As courts have consistently held, this fact does not establish an adverse employment action as a matter of law. *See Rahm v. Thermo Fisher Sci., Inc.,* 07-CV-02688, 2009 U.S. Dist. LEXIS 126635, *20-*22 (S.D. Tex. May 11, 2009) (holding denial of transfer to another team, alone, is not an adverse employment action); *Love v. Elec. Power Bd. of Chattanooga, EPB,* No. 09-5738, 2010 WL 3278230, *3 (6th Cir. 2010) (affirming summary judgment and holding that lateral move allowing plaintiff "to avoid working with coworkers with whom he had a disagreement" did not constitute an adverse employment action as a matter of law); *Martin v. Locke,* 659 F.Supp.2d 140, 148 (D.D.C. 2009) (granting summary judgment and holding that, as a matter of law, transfer to new supervisor was not an adverse employment action even though the supervisor was "reputed to be 'difficult' and has been 'accused' of race and gender discrimination in the past" and stating that "[p]laintiff is certainly not the first or only federal employee ever to have labored under a difficult boss"); *Burger,* 168 F.3d at 879 (affirming judgment as a matter of law against plaintiff where the requested transfer had the "same job title, benefits, duties, and responsibilities"); *Cooper v. United Parcel Serv.,* 368 Fed. Appx. 469, 474-75 (5th Cir. 2010) (affirming summary judgment for employer where transfer involved inconvenient commute but had the "same title and benefits"). Accordingly, the alleged denial of Washington's purely lateral transfer is not an adverse employment decision that is actionable under either Title VII or Section 1981. Washington cannot establish a *prima facie* case of discrimination and Texas Mutual is entitled to summary judgment as to all claims made against it in this case. *Id.*

**B.      Non- Discriminatory Reason**

Next, Texas Mutual contends that, even assuming Washington could establish a *prima facie* case for discrimination on the basis of race with respect to the denial of her transfer request; Washington has not produced any evidence rebutting its explanation that Washington's Stage 2 Performance Notification was the non- discriminatory reason for its decision.  The Court agrees.

The summary judgment evidence establishes that Andrea Shepard and Larry Martin believed it to be improper to transfer an employee with documented insubordination issues to another supervisor simply because the employee did not like her current supervisor.  Shepard Aff. ¶ 6.   Additionally, these supervisors counseled Washington to use the performance notification as an opportunity to improve her behavior. *Id.*  The summary judgment evidence establishes that even Washington admits that the performance notification issued by her African-American supervisor was not discriminatory.  Washington's Depo 105:3-7.  Because Texas Mutual has articulated a non-discriminatory reason for denying Washington's transfer request, the burden shifts to Washington to demonstrate that the proffered reason is a pretext for racial discrimination. *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).  She has not met this burden.

Washington has not filed a response to the motion for summary judgment.  Even without a response from Washington, the Court has considered isolated statements referenced in Washington's complaint and deposition that two Caucasian employees were allowed to transfer, while she was not. (Pl. Complaint, (Dkt. 1, p. 3)); Washington Depo.

10

31:12-32:2. However, there is no summary judgment evidence that these employees were similarly situated, which is required to show pretext. *See Jackson v. Blockbuster, Inc.*, No. 4:09-cv-119, 2010 WL 2268086 at *6 (E.D. Tex. June 4, 2010) (holding that because plaintiff's proffered comparators were not similarly situated or "nearly identical" pretext was not demonstrated as a matter of law).

In support of the complaint's broad, conclusory allegations that Caucasian employees similarly situated to her were allowed to transfer, Washington testified in her deposition that there were two Caucasian employees who should not have been moved to different positions—Sandra Mejia and Donnie Schmidt. *See* Washington Depo. 31:12-32:2. Nevertheless, in this same deposition, Washington admits that she has no evidence that Mejia or Schmidt were transferred despite being placed on Stage 2 Performance Notifications for insubordinate and inappropriate behavior as she had been. *Id.* at 133:19-135:9. Instead, Washington simply testified that it was her belief that both Mejia and Schmidt were bad performers and thus, should have been on some type of performance plan. *Id.* Because Washington has no evidence that either Mejia or Schmidt had comparable violation histories to her (*i.e.,* performance notifications for insubordination and inappropriate behavior), she cannot establish that they were transferred while in "nearly identical" circumstances. Accordingly, Washington cannot rebut Texas Mutual's summary judgment evidence that it had a legitimate, nondiscriminatory reason for denying her transfer. *See Accord Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000). Texas Mutual is entitled to summary judgment on this ground as well. *Id.*

Finally, the summary judgment evidence reflects that Washington cannot base her race discrimination claims on the performance evaluation by her supervisors. Here, Washington herself admits that the performance notification issued by her African-American supervisor was not discriminatory. Washington's Depo 105:3-7. Further, the Fifth Circuit has long held that an employer's belief, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason" and will not show pretext. *See Jackson,* 2010 WL 2268086, *6 (citing *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."); *Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991) ("We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue."); *see also Davenport v. Northrop Grumman Sys. Corp.,* 281 Fed. Appx. 585, 588 (7th Cir. 2008); *Collins-Pearcy,* 698 F. Supp.2d at 757. Accordingly for the additional reasons above, Texas Mutual is entitled to summary judgment in this case against Washington.

## CONCLUSION

Texas Mutual has produced summary judgment evidence establishing that Washington has failed to state any claim for race discrimination in this case and there is no material issue of fact regarding these claims. Texas Mutual's Motion for Summary Judgment is **GRANTED**.

Signed at Houston, Texas on July 27, 2011

George C. Hanks, Jr.
United States Magistrate Judge

12